## IN THE CIRCUIT COURT
## FOR BALTIMORE CITY

KNOWLEDGE LEARNING )
CORPORATION )
650 N.E. Holladay Street )
Suite 1400 )
Portland, OR 97232 )
                     )
                     )
         Plaintiff )
                     )
v. )       Case No. 24-C-07-007655
                     )
MICHAEL MALONEY )
107 St. Albans Way )
Baltimore, Maryland 21212 )
                     )
And )
                     )
RUSSELL G. LUM )
2106 Tuston Ridge Road )
Reisterstown, Maryland 23106 )
                     )
And )
                     )
CREGG SEYMOUR )
1902 Billy Barton Circle )
Reisterstown, MD  21136 )
                     )
And )
                     )
LEARN-IT SYSTEMS, LLC )
300 E. Lombard Street )
Baltimore, Maryland 21202 )
         Defendants. )

MJG07CV3234

2007 OCT 16  PM 2:41
CIVIL DIVISION
RECEIVED
CIRCUIT COURT FOR
BALTIMORE CITY

## COMPLAINT

Knowledge Learning Corporation, through counsel, alleges:

DC1 30210174.1

## NATURE OF PROCEEDINGS

1.      This case arises from the facts and circumstances of Defendant Michael Maloney's ("Maloney"), Russell Lum's ("Lum"), and Cregg Seymour's ("Seymour") breach of their fiduciary duty and duty of loyalty to their former employer, Knowledge Learning Corporation ("KLC"). It is an action for misappropriation of trade secrets, breach of duty of loyalty, fraud, conversion, and tortious interference with economic relations.

2.      Maloney, Lum, and Seymour, all former executives of KLC, were in a unique position to expropriate and improperly obtain KLC's confidential information and property, including its proprietary computer software, customer lists and information about customer relations. They are harming or destroying KLC's relationships with important customers and are soliciting KLC's employees who work with those customers. They are engaging in this unfair competition through  Defendant Learn-It Systems, LLC ("Learn-It"), a company they formed. Rather than compete freely and fairly in the extremely competitive business of providing school-age education, Maloney, Lum, Seymour, and their new company have taken the shortcut of violating fiduciary duties to KLC and engaging in the other and further wrongdoing alleged herein.

## PARTIES

3.      KLC is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in Portland, Oregon.  KLC is a provider of early childhood and school-age education and care, doing business in Maryland, among many other states.

4.      Maloney was formerly employed by KLC as Vice President, Operations. Maloney was an officer of KLC, who resigned his employment effective April 3, 2007.  His residence, on information and belief, is 107 St. Albans Way, Baltimore, Maryland 21212.

2

5.    Lum was formerly employed by KLC as Director of Information Technology. Lum resigned his employment effective March 30, 2007. On information and belief, Lum's residence is 2106 Tuston Ridge Road, Reisterstown, Maryland 23106.

6.    Seymour was formerly employed by KLC as Director of Finance. Seymour resigned his employment effective May 11, 2007. On information and belief, Seymour's residence is 1902 Billy Barton Circle, Reisterstown, Maryland 21136.

7.    Maloney is the principal and founder of Defendant Learn-It, a limited liability company organized and existing under the laws of Maryland, located at 300 East Lombard Street, Suite 840, Baltimore, Maryland 21202. Maloney is Learn-It's President.

8.    Maloney formed and registered Learn-It with the state of Maryland on February 23, 2007, before he left KLC. Maloney never informed KLC during his employment that he was forming and starting an entity that would compete directly with KLC.

### JURISDICTION AND VENUE

9.    Personal jurisdiction is proper over Defendant Maloney because he is a resident and citizen of the state of Maryland, has transacted business in the state of Maryland, and has committed tortious acts within this state and/or committed tortious acts outside this state that have caused injury within the state of Maryland.

10.    Personal jurisdiction is proper over Defendant Lum because he is a resident and citizen of the state of Maryland, has transacted business in the state of Maryland, and has committed tortious acts within this state and/or committed tortious acts outside this state that have caused injury within the state of Maryland.

11.    Personal jurisdiction is proper over Defendant Seymour because he is a resident and citizen of the state of Maryland, has transacted business in the state of Maryland, and has

3

committed tortious acts within this state and/or committed tortious acts outside this state that have caused injury within the state of Maryland.

12.     Personal jurisdiction is proper over Defendant Learn-It because it is a limited liability company organized and existing under the laws of the state of Maryland with its principal place of business in Baltimore, Maryland, and it has transacted business and committed tortious acts within the state of Maryland and/or outside this state that have caused injury in the state of Maryland.

13.     Venue is proper in this Court pursuant to Maryland Code § 6-201(b), because the causes of action set forth in this Complaint arose within Baltimore City.

## FACTS

### KLC's Business and Its Acquisition of Education Station LLC

14.     Prior to August 23, 2006, Maloney, Lum, and Seymour were employed for or on behalf of Education Station LLC ("Education Station") and/or one or more of the following Education Station parent entities or affiliates: Educate, Inc., formerly known as Sylvan Learning Systems, Inc. ("Sylvan"); Catapult Learning LLC ("Catapult"), an indirect wholly owned subsidiary of Educate, Inc.; or Educate Operating Company, LLC ("EOC"), at all relevant times an indirect wholly owned subsidiary of Educate. Collectively, these parties are referenced hereinafter as "Educate." Maloney was Vice President of Education Station, Lum was its Director of Information Technology, and Seymour was its Director of Finance.

15.     On August 23, 2006, KLC acquired Education Station and a Technology License for $16 million and entered into a Membership Interest Purchase Agreement (the "Purchase Agreement"). Maloney, Lum, and Seymour thereafter became KLC employees. Maloney also became an officer of KLC.

4

DC1 30210174.1

16.    Maloney, Lum, and Seymour had noncompetition agreements with Educate. However, neither Maloney, Lum, Seymour, nor anyone else at Educate disclosed to KLC the existence of these agreements. KLC is informed and believes that Maloney, Lum and Seymour conspired to conceal the existence of the noncompetition agreements so that KLC would not demand they be assigned.

17.    KLC operates in an extremely competitive environment, particularly with respect to the development and maintenance of its clients and client relationships. Its relationships with its clients are an essential part of its success.

18.    One of KLC's primary quality education brands is Education Station, which, among other things, works with schools and school districts to provide Supplemental Education Services ("SES"). Such services assist students, schools, and school districts in meeting and surpassing educational goals, including, but not limited to, those set by the No Child Left Behind legislation.

19.    KLC has developed and acquired, at great expense, methods and practices to ensure that it can successfully compete in the SES market.

20.    One such method KLC acquired in purchasing Education Station and an important component of the acquisition to KLC was Education Station's Student Information System ("SIS"). SIS is a confidential and proprietary computer program that allows KLC to, among other things, carefully track student progress and achievement. SIS, by carefully charting progress, allows KLC to accurately and quickly determine specific areas in which students require additional assistance, thereby allowing instructors to focus on those areas most in need of improvement to meet No Child Left Behind standards. SIS allows diagnostic reports, analysis,

5

individualized plans, state-specific assessments, and provides the means to bill the school district for services rendered.

21.    Lum worked on SIS for KLC and had access to the program. In fact, he participated in and was paid pursuant to a systems architecture incentive plan to perform optimization work on SIS. Lum's access to SIS did not, however, permit him to copy, take, use, or send the program to unauthorized users or for unauthorized purposes.

22.    In the course of its business, including by its acquisition of Education Station, KLC has developed, acquired, maintained, and used trade secrets and other confidential and proprietary information, including but not limited to its client lists, needs, and preferences; various marketing plans and strategies; financial information; operating information; and computer software programs, including SIS.

23.    KLC has developed and maintained, at significant expense, valuable working relationships and substantial goodwill with its customers. KLC has longstanding relationships with many of its customers and has a reasonable expectation that such relationships will continue on a going-forward basis.

24.    As KLC officers and/or employees, Maloney, Lum, and Seymour were entrusted with the responsibility of maintaining KLC's customer relationships and expanding those relationships.

25.    As KLC officers and employees, Maloney, Lum, and Seymour were entrusted with KLC's confidential and proprietary information and had an obligation to ensure that such information was properly kept and maintained.

6

**Maloney, Lum, and Seymour's Scheme to Form Learn-It
in Competition with KLC**

26.    During and because of their employment with KLC, Maloney, Lum, and Seymour

were paid, $165,000, $135,000, and $98,100.55, respectively.

27.    At the same time as he was being highly compensated by KLC, however,

Maloney was actively investigating and discussing other employment opportunities, including

opportunities with Hooked on Phonics, an entity affiliated with his former employer, Educate,

while he should have been devoting his full attention and energies to KLC.

28.    Maloney, despite his status as a KLC corporate officer and a highly client-facing

employee, did not disclose the fact that he was actively pursuing other opportunities, nor did he

disclose the fact that he had already formed Learn-It, a company that would compete directly

with KLC, or that he had already filed an application to allow Learn-It to engage in the SES

business in the state of New Jersey, among others.

29.    Learn-It was formed by Maloney on February 23, 2007, one month before he left

KLC. However, Maloney necessarily must have begun the process of forming Learn-It weeks

before he actually filed the corporate papers with the state of Maryland.  In fact, he worked with

various consultants to form the company. He did this when, as an officer of KLC, Maloney had

fiduciary duties to the company and should have been devoting his full time and attention to

KLC.

30.    Before resigning, Lum, too, was actively working against KLC's interests.  Upon

information and belief, Maloney and Learn-It hired Lum to gain unauthorized access to SIS.

Learn-It also subsequently hired other KLC employees, principally to acquire the technical

expertise they possessed regarding KLC's methods and practices of doing business.

7

DCI 30210174.1

31.     When Lum resigned from KLC, he informed the company that he did not have a job and did not know where he would next work.  In reality, Lum, upon information and belief, took SIS with him when he left KLC and, obviously, in so doing exceeded his authorized access to KLC's computers and computer systems.

32.     KLC did not authorize Lum, Maloney, or Learn-It to obtain SIS.  Defendants did so for their own benefit to establish Learn-It and compete directly with KLC.  Upon information and belief, Lum and Maloney, on behalf of Learn-It, used KLC computers to access, copy, and misappropriate other KLC proprietary and trade-secret information, without authorization.

33.     When Maloney resigned from KLC, he took and has not returned his company issued laptop computer.

34.     When Seymour resigned from KLC, he informed the company that he did not have a job and did not know where he would next work.  In reality, Seymour had already started working on behalf of Learn-It, including signing an application for state authorization as Learn-It's "General Manager" several months before resigning from KLC.

35.     Using confidential contact and salary information, Defendants have induced at least 20 KLC employees to leave KLC to work for Learn-It and compete with KLC.

### Defendants' Unfair Competition with KLC

36.     During and because of their employment with KLC, Maloney, Lum, and Seymour received and had access to various KLC confidential and proprietary information as set forth above.  During and because of their employment with KLC, Maloney, Lum, and Seymour had access to and learned of KLC's employees and clients.

37.     One such client Maloney obtained access to and worked with as a result of his employment with KLC was the U.S. Virgin Islands.  Maloney and other Learn-It employees

8

represented to the U.S. Virgin Islands that Learn-It was an off-shoot of KLC, when in fact it is not. In the latter part of 2006, the U.S. Virgin Islands paid KLC approximately $1.5 million for services rendered in the SES market.

38.     Learn-It now competes with KLC in other regions as well, for example, seeking and obtaining work from several KLC clients including school districts in Alabama New York, New Jersey, Maryland, and North Carolina, among others. Learn-It advertises and markets its services based on Education Station's business model, including SIS, though of course it neglects to mention that it is KLC's model and technology that it is using. Instead, it informs potential customers that it has a "proven system," which does all that SIS does, *i.e.*, among other things, focusing on skill gaps, analyzing progress, providing state-specific assessments, providing individualized plans, and data analysis. Learn-It does not inform potential customers that the system it utilizes was "proven" by KLC.

39.     Further, Learn-It employees, upon information and belief, represent to school districts and parents that the company is an "off shoot" of or otherwise connected in some way to Education Station. Learn-It is engaging in such improper representations in order to induce KLC customers to do business with Learn-It rather than KLC.

40.     In addition to SIS, Maloney, Lum, and Seymour took and are using various KLC confidential and proprietary information, including but not limited to customer lists and other customer information and proprietary software, including but not limited to KLC's SIS software, and employee contact and salary information.

41.     As a result of Defendants' wrongdoing, KLC has lost profits of at least $4 million according to proof, and its damages are increasing daily.

9

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
## BY DEFENDANTS MALONEY, LUM, AND SEYMOUR
## IN VIOLATION OF MARYLAND TRADE SECRETS ACT

42.    KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

43.    KLC's confidential proprietary information described above constitute trade secrets as defined by the Maryland Trade Secrets Act, MD Code Ann. § 11-1201(e).

44.    Upon information and belief, Defendants Maloney, Lum, and Seymour obtained and unlawfully converted KLC's confidential proprietary and trade-secret information to use it to compete with it in the marketplace, including but not limited to the SIS, customer lists, customer preferences and contacts, marketing plans, and strategies.

45.    Upon information and belief, Defendants were aware at all times that this confidential proprietary information was acquired by improper means and knowingly used and continue to use it.

46.    Defendants' past and continued misappropriation of these trade secrets has irreparably injured KLC in an amount to be determined at trial in excess of $4 million, plus prejudgment interest.

47.    Defendants' acts alleged herein were oppressive, malicious, and done with specific intent to injure KLC.

WHEREFORE, KLC respectfully prays for this Court:

A.    to preliminarily and permanently enjoin Defendants from further misappropriation of KLC's trade secrets and to immediately return Plaintiff's SIS code, trade secrets, and other confidential proprietary information;

10

DC1 30210174.1

B.     to award KLC damages it has suffered, in an amount in excess of $4 million to be determined at trial;

C.     to award KLC punitive damages against Defendants in an amount according to proof;

D.     to award KLC the costs of this action, including reasonable attorneys' fees, pursuant to MD Code Ann. § 11-1204; and

E.     to grant KLC such other and further relief as may be just and equitable.

## COUNT II – CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS BY ALL DEFENDANTS

48.     KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

49.     Upon information and belief, Defendants entered into an agreement and conspiracy whereby Lum conspired with Maloney, Seymour, and Learn-It to take SIS and other confidential proprietary information and trade secrets from KLC for the purposes of unlawful misappropriation and disclosure of such confidential proprietary information and trade secrets to Learn-It.

50.     Defendants' misappropriation and disclosure of KLC's confidential proprietary information and trade secrets was necessary so that Learn-It could immediately enter the marketplace and begin competing—capitalizing on KLC's goodwill—by having a "proven" product and without the need to develop their own system or product.

51.     Upon information and belief, Defendants were at all times aware that KLC's confidential proprietary information was acquired by improper means and knowingly used and use it.

11

52.     Defendants' acts alleged herein were oppressive, malicious, and done with specific intent to injure KLC.

53.     As a result of Defendants' conspiracy to misappropriate KLC's confidential proprietary information and trade secrets, KLC has been irreparably injured in an amount in excess of $4 million according to proof.

WHEREFORE, KLC respectfully prays for this Court:

A.     to award KLC damages it has suffered, in an amount to be determined in excess of $4 million;

B.     to award KLC punitive damages against Defendants in an amount according to proof;

C.     to award KLC the costs of this action, including reasonable attorneys' fees pursuant to MD Code Ann. § 11-1204; and

D.     to grant KLC such other and further relief as may be just and equitable.

## COUNT III – BREACH OF DUTY OF LOYALTY
## BY DEFENDANTS MALONEY, LUM, AND SEYMOUR

54.     KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

55.     At all times during the scope of their employment by KLC, Defendants Maloney, Lum, and Seymour owed a duty of loyalty to KLC such that, among other things, Defendants were required to act exclusively for the benefit of KLC, provide KLC with the full measure and benefit of their services, refrain from performing services for or on behalf of companies or entities other than KLC, and to fully disclose any actual or potential conflicts of interest relevant to their duties to KLC.  Because he was officer of KLC, Maloney's duties to the company were as a fiduciary.

12

DCI 30210174.1

56.     During the course and scope of their employment with KLC and thereafter, Maloney, Lum, and Seymour breached their duty of loyalty owed to KLC by, among other things, (a) misappropriating KLC's confidential proprietary information and trade secrets, (b) failing to devote their full time and energies to KLC, (c) failing to act in the best interests of KLC, (d) failing to disclose information that would be valuable to KLC in the conduct of its own business, (d) diverting business from KLC to Learn-It, (e) failing to act in good faith in their dealings with KLC, (f) using KLC property for their own advantage, (g) representing to KLC customers that Learn-It has a "proven" product that is in reality KLC's proven product, and (h) failing to disclose to KLC the existence of their noncompetition agreements.  Maloney's misconduct further breached his fiduciary duties to KLC.

57.     By doing so, Maloney, Lum, and Seymour acted oppressively, maliciously, and intentionally with specific intent to injure KLC.

58.     As a result of Defendants' breaches, KLC has been injured irreparably and otherwise, as to be determined at trial, in an amount in excess of $4 million.

WHEREFORE, KLC respectfully prays for this Court:

A.      to award KLC damages it has suffered, in an amount to be determined in excess of $4 million;

B.      to award punitive damages against Defendants in an amount according to proof;

C.      to award KLC the costs of this action, including reasonable attorneys' fees; and

D.      to grant KLC such other and further relief as may be just and equitable.

### COUNT IV – FRAUD BY MALONEY, LUM, AND SEYMOUR

59.     KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

13

60.     KLC is informed and believes that Maloney, Lum, and Seymour conspired to conceal the existence of their noncompetition agreements and affirmatively misrepresent that there were no such agreements.

61.     In reasonable reliance on Defendants' concealment and misrepresentations, KLC did not require Educate to assign Maloney's and Lum's and Seymour's noncompetition agreements to it in the Purchase Agreement.

62.     Maloney, Lum, and Seymour intended KLC to so rely.

63.     As a direct and proximate result of Maloney, Lum, and Seymour's fraud, KLC does not have a noncompetition agreement prohibiting by contract their wrongdoing alleged herein.  KLC was thereby damaged in an amount according to proof at trial.

64.     Defendants' actions were oppressive, malicious, and done with specific intent to injure KLC.

WHEREFORE, KLC respectfully prays for this Court:

A.      to enter judgment in favor of KLC and against Maloney, Lum, and Seymour, in an amount according to proof at trial, including punitive damages;

B.      to award KLC's attorneys' fees and costs herein; and

C.      to grant such and further relief as the Court deems just and proper.

### COUNT V – CONVERSION BY ALL DEFENDANTS

65.     KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

66.     The actions of Maloney, Lum, and Seymour in improperly taking for the benefit of Learn-It confidential proprietary information and materials from KLC, including but not

14

limited to KLC customer and client information and the SIS code, without permission, authorization, or justification, constituted a conversion of KLC's property.

67.     The individual Defendants' taking of KLC's property for their use and the use of Learn-It was unauthorized, wrongful, and fraudulent.  As a result, KLC has been damaged in an amount in excess of $4 million according to proof at trial.

68.     Defendants' actions were oppressive, malicious, and done with specific intent to injure KLC.

WHEREFORE, KLC respectfully prays for this Court:

A.     to direct Defendants to return all KLC property in their possession, custody, or control;

B.     to enjoin Defendants from using any KLC property in their business activities; and

C.     to enter judgment in favor of KLC and against Defendants, in an amount to be proven at trial in excess of $4 million plus punitive damages, together with interest, costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT VI - TORTIOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONS BY ALL DEFENDANTS

69.     KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

70.     Defendant Learn-It, by virtue of Maloney's, Lum's and Seymour's knowledge, knew of the valuable relationships between KLC and its customers and employees.

71.     Through the improper and unlawful means of Maloney's and Lum's and Seymour's breaches of fiduciary duty, expropriation of KLC's trade secrets and proprietary materials, Defendants' soliciting KLC's employees, and other wrongdoing alleged herein,

15

Defendants have tortiously interfered with the contractual relationship between KLC and its customers and employees.

72.    KLC has suffered damages as a result of Learn-It's tortious interference in excess of $4 million according to proof at trial.

73.    Defendants' conduct is oppressive, malicious, intentional, and done with specific intent to injure KLC.

WHEREFORE, KLC respectfully prays for this Court:

A.    to permanently enjoin Defendant Learn-It from continuing to interfere with its contractual relations with its customers and employees;

B.    to award KLC the damages it has suffered, in an amount to be proven at trial in excess of $4 million plus punitive damages;

C.    to award KLC the costs of this action, including KLC's reasonable attorneys' fees; and

D.    to grant KLC such other and further relief as may be just and equitable.

## COUNT VII - TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS BY ALL DEFENDANTS

74.    KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

75.    KLC had an existing business relationship with various customers, including but not limited to the U.S. Virgin Islands school district. Defendants, direct competitors of KLC, were aware of KLC's relationship with the U.S. Virgin Islands school district and other customers.

16

76.     Despite knowledge of this relationship, Defendants used KLC's confidential and proprietary information, including but not limited to the SIS code, customer lists, customer preferences, and contact information to solicit the U.S. Virgin Islands and other customers.

77.     This interference with KLC's contractual relationships led to a termination of the relationship between KLC and the U.S. Virgin Islands and other customers according to proof.

78.     KLC has suffered damages in excess of $4 million according to proof as a result of Defendants' tortious interference with its economic relations with its customers.

79.     Defendants' conduct was oppressive, malicious, and done with specific intent to injure KLC.

WHEREFORE, KLC respectfully prays for this Court:

A.      to permanently enjoin Defendants from continuing to interfere with its economic relationships with its customers;

B.      to award KLC the damages it has suffered in an amount to be proven at trial in excess of $4 million plus punitive damages;

C.      to award KLC the costs of this action, including KLC's reasonable attorneys' fees; and

D.      to grant KLC such other and further relief as may be just and equitable.

## COUNT VIII - VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT AGAINST ALL DEFENDANTS

80.     KLC realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

81.     KLC's computer systems are protected computers that are used in interstate commerce and have Internet access.

17

82.     Neither Defendants Lum nor Maloney nor Seymour were authorized to access KLC's computer systems to take its confidential and proprietary information, including but not limited to SIS.

83.     Defendant Lum on his own behalf and on behalf of Defendants Maloney, Seymour and Learn-It, knowingly and with intent to defraud, accessed KLC's computers for improper purposes and without authorization and exceeding his authorization. Defendants as a result obtained valuable data thus furthering the intended fraudulent conduct within the meaning of 18 U.S.C. § 1030.

84.     As a result of Defendants' conduct, KLC has suffered damage or loss in an amount not less than $5,000, within the meaning of 18 U.S.C. § 1030. KLC has suffered and will continue to suffer substantial losses in excess of $5,000, including but not limited to losses sustained in responding to Defendants' actions, investigating Defendants' actions and taking remedial steps to prevent Defendants' further offenses.

85.     Pursuant to 18 U.S.C. § 1030(g), KLC is entitled to the recovery of its damages in an amount to be proven at trial and to injunctive or other equitable relief.

WHEREFORE, KLC respectfully prays for this Court:

A.     to permanently enjoin Defendants from using and possessing KLC's confidential and proprietary computer information, including but not limited to SIS;

B.     to award KLC the damages it has suffered in an amount to be proven at trial;

C.     to award KLC the costs of this action, including KLC's reasonable attorneys' fees; and

D.     to grant KLC such other and further relief as may be just and equitable.

DCI 30210174.1

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable herein.

Respectfully submitted,

KNOWLEDGE LEARNING CORPORATION

By: _____
Raymond C. Baldwin, Esq.
David Burns, Esq.

SEYFARTH SHAW LLP
815 Connecticut Avenue, NW, Suite 500
Washington, DC 20006
(202) 463-2400 (ph)
(202) 828-5393 (fax)

Dated: October 16, 2007          Attorneys for Plaintiff

19

DC1 30210174.1